BLUE, Chief Judge.

ORDER ON APPELLEE’S MOTION TO DISMISS APPEAL

The Sarasota Manatee Airport Authority, defendant in the circuit court, has *415 moved to dismiss this appeal contending that the orders appealed, one granting the defendant’s motion for summary judgment and one denying the plaintiffs’ motion for summary judgment, are nonfinal and non-appealable. We grant the motion in part because orders denying summary judgment are not appealable. See Hudson v. State Farm Mut. Auto. Ins. Co., 716 So.2d 327 (Fla. 2d DCA 1998). Accordingly, we dismiss the appeal of the order denying defendant’s motion for summary judgment. Based on the following analysis, however, we deny the request to dismiss the appeal of the order granting summary judgment.
The order that grants a motion for summary judgment is likewise not appeal-able, as it lacks the finality of an order entering judgment in favor of a party and against the party opponent. Moore Int’l Trucks, Inc. v. Foothill Capital Corp., 560 So.2d 1301 (Fla. 2d DCA 1990). As this court has routinely done, see id.; L & F Partners, Ltd. v. Miceli, 555 So.2d 1283 (Fla. 2d DCA 1990), and to the extent that it is necessary to do so,[1] we relinquish this court’s inchoate jurisdiction for twenty days to allow the appellants to obtain a final summary judgment with sufficient words of finality to confer upon this court jurisdiction to determine its correctness. Should they fail to timely transmit the additional order to this court, this appeal will be dismissed.
Two Florida district courts[2] disfavor the approach we are taking on this motion and routinely dismiss appeals brought to them in this posture, whether they be appeals from orders merely granting summary judgment or those merely granting motions to dismiss.[3] Before the adoption of Florida Rule of Appellate Procedure 9.110(m), which codified a procedure for retaining premature, inchoate appeals, the First District grounded its understandable objection to directing circuit courts to enter belated appealable orders upon its conviction that the appellate court, having determined that it is without jurisdiction, lacks the authority to enter any orders except of course one dismissing the appeal for lack of jurisdiction. See Johnson v. First City Bank of Gainesville, 491 So.2d 1217 (Fla. 1st DCA 1986). Following the adoption of rule 9.110(m), the First District determined that as a matter of policy it would permit the supplementation of the record with an appealable order— once the district court was called upon to *416 resolve the jurisdictional issue — only under exceptional circumstances. Benton v. Moore, 655 So.2d 1272, 1273 (Fla. 1st DCA 1995).
The Fifth District’s disinclination to permit appellants belatedly to obtain appeal-able orders originates from its desire to promote judicial economy. See Arcangeli v. Albertson’s, Inc., 550 So.2d 557, 558 (Fla. 5th DCA 1989). We respectfully differ from this conclusion, at least in those cases in which the nonappealable, nonfinal orders come to this court’s attention during the briefing process or following perfection of the appeal.
Not all of these deficient orders are discovered by opposing counsel, as occurred here, or by this court’s clerk at the inception of the appeal; many are detected by the panels assigned to consider appeals. By that point the case has been fully briefed and the circuit court clerk has transmitted the record to this court, as has occurred in this case which has recently been perfected but not yet assigned to a panel to consider. The judicial labor required to obtain an appealable order is insignificant; a form order is generated and the appeal rests dormant for a short time awaiting the submission of the proper, final order from the circuit court.
On the other hand, dismissing the appeal without providing counsel an opportunity tp rescue it invariably results in a second appeal once the circuit court enters a final, appealable order. The judicial labor that the district court spends on this exercise can be substantial. While we decline to delineate all the steps that commonly follow if dismissal is the cure for this jurisdictional defect when it is discovered at its latest hour, by the merits panel considering the appeal, we note that the following general categories of effort must be expended.
After generating and distributing the order of dismissal, the court may have to contend with a motion for rehearing; once the dismissal order becomes final, the clerk sends copies to the trial court clerk and the publishers and returns the record some time later to the circuit court clerk.
The new appeal is invariably filed, and this court’s clerk’s staff sets it up, dockets and files two or more briefs and perhaps a request for oral argument, and may have to docket motions and send them to the court for consideration. The circuit court clerk again transmits the record to this court, and the clerk’s staff then assigns the perfected appeal to a panel.
We believe that this taxation of the resources of the clerk’s staff constitutes an expenditure of judicial labor that is more usefully employed setting up, perfecting, and closing out appeals that make only one visit to the court, and we disagree with the conclusion in Arcangeli that judicial economy is always served by dismissing premature appeals. We are mindful of Judge Farmer’s impatience with trial judges and attorneys who fail to appreciate the need for words of finality to render final orders appealable, see Dobrick v. Discovery Cruises, Inc., 581 So.2d 645, 646-47 (Fla. 4th DCA 1991) (Farmer, J., dissenting), but we are unwilling to adopt a practice to illustrate that point if it is undertaken at the expense of the efficiency of the court’s deputy clerks. Additionally, requiring a second appeal to be filed results in additional expense to the parties, as well as unnecessary delay in the adjudication of their dispute in the district court.
By allowing appellants to obtain an ap-pealable order in this case, we are promoting judicial economy and accommodating the parties’ expectations to have their appeal considered as expeditiously and inexpensively as possible.
*417 Motion to dismiss granted in part and denied in part; appeal dismissed in part; and the appellants are directed to obtain an appealable order.
FULMER and COVINGTON, JJ., concur.

.In a series of certified questions, the First District in Johnson v. First City Bank of Gainesville, 491 So.2d 1217 (Fla. 1st DCA 1986), suggested the inappropriateness of "relinquishing” jurisdiction to obtain an appeal-able order when the defect that is sought to be cured is the lack of appellate jurisdiction in the first place. Uncertainty abouL the correctness of relinquishing jurisdiction under these circumstances is also reflected in the committee note to Florida Rule of Appellate Procedure 9.110(m) governing premature appeals, which reads in part, "[Subdivision (m) ] further provides that the appellate court may relinquish jurisdiction or otherwise allow the lower court to render such a final order before dismissal of the appeal.” Fla. R.App. P. 9.110(m) committee notes (emphasis added).

. The Fourth District joined the First and Fifth Districts in condemning this practice in Russell v. Russell, 507 So,2d 661 (Fla. 4th DCA 1987), but receded from that position in Dobrick v. Discovery Cruises Inc., 581 So.2d 645 (Fla. 4th DCA 1991) (en banc).

. Orders granting motions to dismiss that fail to dismiss the cause itself are subject to the same jurisdictional infirmities as are those that simply grant motions for summary judgment. See Bd. of County Comm’rs of Madison County v. Grice, 438 So.2d 392 (Fla.1983); Gries Inv. Co. v. Chelton, 388 So.2d 1281 (Fla. 3d DCA 1980).