# DISTRICT COURT OF APPEAL OF FLORIDA
## SECOND DISTRICT

_____

MELVIN W. ENGELKE, III,

Appellant/Cross-Appellee,

v.

JAMES LOGAN; JONATHAN LOGAN; HLFIP HOLDING,
INC.; MAILGUARD, INC.; SMART COMMUNICATIONS
DESOTO, INC.; SMART COMMUNICATIONS WEST,
INC.; SMART COMMUNICATIONS COLLIER, INC.;
SMART COMMUNICATIONS HOLDING, INC.;
SMART COMMUNICATIONS LEE, INC.; and
SMART COMMUNICATIONS PASCO, INC.,

Appellees/Cross-Appellants.

No. 2D2022-4063

_____

August 7, 2024

Appeal from the Circuit Court for Hillsborough County; Rex M. Barbas,
Judge.

Lindsay Patrick Lopez and Dean A. Kent of Trenam, Kemker, Scharf,
Barkin, Frye, O'Neill & Mullis, P.A., Tampa, for Appellant/Cross-
Appellee.

Shane B. Vogt and Kenneth G. Turkel of Turkel Cuva Barrios, P.A.,
Tampa, for Appellees/Cross-Appellants.


SLEET, Chief Judge.

Melvin Engelke, III, challenges the trial court's partial final summary judgment entered against him and in favor of Smart Communications West, Inc.; Smart Communications Collier, Inc.; Smart Communications Holding, Inc.; and Smart Communications Pasco, Inc., arguing that the trial court erred by determining that Engelke's declaratory action against these four defendants (collectively, the Time-Barred Entities) was barred by the statute of limitations.[1] *See* Fla. R. App. P. 9.110(k) ("If a partial final judgment totally disposes of an entire case as to any party, it must be appealed within 30 days of rendition."). Engelke's notice of appeal also purports to challenge the trial court's partial final summary judgment entered in favor of James Logan, individually. However, Engelke has not raised any arguments on appeal specifically challenging that order. Accordingly, we affirm that order without comment.

In addition to these five defendants, Engelke also named the remaining appellees[2] as defendants in the underlying action. The trial court denied final judgment as to these appellees, a ruling that all appellees now cross-appeal. Because the final judgments ended the litigation below only between Engelke and James Logan and the Time-Barred Entities, the litigation between Engelke and the defendants Jonathan Logan, Smart Communications Desoto, Smart Communications Lee, HLFIP Holding, and Mailguard remains pending. As such, the order on appeal was final as to the Time-Barred Entities but not the five remaining appellees. Accordingly, the cross-appeal is

---

[1] We find no merit in Engelke's other arguments on appeal.

[2] The remaining appellees are Jonathan Logan; Smart Communications Desoto, Inc.; Smart Communications Lee, Inc.; HLFIP Holding, Inc.; and Mailguard, Inc.

2

dismissed as to Jonathan Logan, Smart Communications Desoto, Smart Communications Lee, HLFIP Holding, and Mailguard.[3] *See Better Gov't Ass'n of Sarasota Cnty. v. State*, 802 So. 2d 414, 415 (Fla. 2d DCA 2001).

We affirm the final judgments but write only to address the application of the statute of limitations on the declaratory judgment action.

## I.    BACKGROUND

Around 2010, Melvin Engelke was dating Alexis Logan.  At some point, while having dinner and drinks with Alexis and her parents at Alexis's apartment, James Logan (Alexis's father) proposed the idea of a business concept and Engelke's potential role in the concept.  Some time later, James and Engelke spoke over the phone, and Engelke entered into an oral agreement with James to invest $100,000 in James' Smart Jail Mail[4] business.  The oral agreement was never reduced to writing,

---

[3] The cross-appellants argue that the trial court erred in failing to enter final judgment in favor of the remaining defendants and that it erred in failing to enter a declaration that Engelke did not own 10% of the concept or the defendant entities.  The Time-Barred Entities do not have standing to raise the first argument because they are not the injured parties.  *See* Philip J. Padovano, Florida Appellate Practice § 10:4, Entitlement to review—Standing (2024 ed.) ("Appellate review is limited not only to those who are entitled to review an order by virtue of their status in the case but also to those who are aggrieved in some way by the order.").  Furthermore, our conclusion that the trial court did not err in determining that the statute of limitations disposed of the declaratory action moots the second argument because once the trial court determined that the declaratory action was time-barred as to these cross-appellants, it could not reach the actual question of whether the declaration should be made.

[4] Smart Jail Mail is described in Engelke's complaint as a concept involving intellectual property and software "that would connect family and friends with inmates, prisoners, and detainees in correctional

and they each disagree as to the terms of the agreement. Engelke contends that he was entitled to 10% ownership of the entire Smart Jail Mail concept. The Logans, on the other hand, contend that Engelke was only entitled to 10% of the start-up company, Smart Communications US, Inc., and that he was not entitled to ownership of any future companies they created that used the Smart Jail Mail concept.

Thereafter, Engelke and Alexis broke up, and Engelke filed a salvo of lawsuits against the Logans and their businesses over a period of seven years from July 2012 through March 2019. In July 2012, Engelke filed a lawsuit against Smart Communications US (the Loan Case), seeking to recover $105,000 loaned to the company. On May 14, 2014, he amended the complaint to assert a breach of fiduciary duty claim. He alleged that James "caused other corporations to be formed and assigned those corporations the right to use the concept of 'smart jail mail.' " In August 2015, the fiduciary duty claim was dismissed without prejudice to Engelke bringing a derivative action.[5]

In 2016, he did just that, asserting the same breach of fiduciary duty claim in a derivative action against James, Alexis, and Smart Communications US. In August 2017, the action was dismissed for lack of prosecution. Also in 2016, Smart Communications US filed an action seeking an appraisal under section 607.1302, Florida Statutes, after Engelke asserted his statutory appraisal rights and demanded payment for his share of Smart Communications US. That action is still pending.

---

institutions using a fast, low cost, and easy to use two-way electronic messaging system."

[5] On June 19, 2019, after Smart Communications US accepted a proposal for settlement, Engelke voluntarily dismissed the original Loan Case.

Then, on March 12, 2019, Engelke filed a two-count complaint, starting the underlying action. The first count was for declaratory judgment against all appellees. Specifically, Engelke alleged that he invested $100,000, paid for marketing and travel expenses, and provided his business assistance and exposure to his business contacts to the Logans in exchange for ownership of 10% of the entire Smart Jail Mail concept and all entities that would provide related Smart Jail Mail services. He further alleged that the Logans have refused to recognize Engelke's alleged ownership interests and have excluded Engelke from the operation, profits, and distributions related to the Smart Jail Mail concept as to the defendant entities. As such, he sought a declaration that he owned 10% of the entire Smart Jail Mail concept and that as a result, he also owned 10% of the defendant entities. The second count for fraudulent misrepresentation was filed only against James and Jonathan Logan and alleged that the Logans had misrepresented that Engelke would have 10% ownership in the concept and all related entities.

On May 2, 2019, all defendants filed a motion to dismiss and strike the complaint with prejudice. Specifically, the defendants argued that the underlying action was time-barred as it was filed in March 2019, nine years after the alleged initial investment in the Smart Jail Mail concept and seven years after the formation of the new entities which were alleged to have used the Smart Jail Mail concept. The defendants argued, among other things, that Engelke was aware of the new entities in May 2014 when he filed a breach of fiduciary duty count in the Loan Case and that he therefore was barred by the four-year statute of limitation for oral agreements set forth in section 95.11(3)(k), Florida Statutes (2019).

5

On September 5, 2019, the trial court entered its order on the defendants' motion, granting the motion to dismiss as to James Logan based on the statute of limitations but denying the motion to dismiss the remaining defendants. Specifically, the trial court took notice of the 2016 derivative action, which also alleged fraud against James Logan. The trial court explained that a review of the 2016 case made it obvious that Engelke's attorney was on notice of the alleged fraud by James Logan in May 2014. It concluded that because knowledge by the attorney is imputed to the client, the 2016 fraud allegations were a basis for dismissal. Following the dismissal of James, the declaratory judgment count remained against Jonathan Logan as well as the defendant entities and the fraudulent misrepresentation count remained only against Jonathan Logan.

Thereafter, Jonathan Logan and all defendant entities filed their answer and affirmative defenses, including statute of limitations. On June 5, 2020, Jonathan Logan and the defendant entities filed their renewed motion to dismiss and motion for summary judgment. They again argued that Engelke's claims were barred by the statute of limitations. Specifically, they argued that Engelke's March 11, 2015, deposition testimony in the Loan Case conclusively established that he knew about the alleged fraud and his exclusion from other Smart-related entities more than four years before the underlying action was filed. In support of the motion, they filed with the trial court copies of (1) their May 2, 2019, Motion to Dismiss and Strike Complaint with Prejudice; (2) the September 5, 2019, hearing transcript on the motion to dismiss; (3) the September 5, 2019, order on the motion to dismiss; (4) transcript of Engelke's March 11, 2015, deposition in the Loan Case; and (5) transcript of Jonathan Logan's February 19, 2015, deposition in the

6

Loan Case. Engelke did not file a response in opposition to the motion for summary judgment.

The trial court held a hearing on the motion, and on August 31, 2020, it entered an order granting summary judgment in favor of Jonathan Logan and granting summary judgment based on the statute of limitations as to any claims arising out of Engelke's ownership interest in the concept and any claims arising out of any alleged ownership interest in entities formed on or before March 11, 2015. The trial court explained that count one was actionable only to the extent it sought to assert a claim based on an alleged oral agreement and that Engelke was not entitled to declaratory relief based on fraud or misrepresentation. The trial court granted leave to amend "for the sole purpose of alleging breaches of the alleged agreement upon which count [one] is based which occurred on or after March 12, 2015."[6]

On November 14, 2022, upon the Logans' and defendant entities' motions, the trial court entered final judgment for James Logan and the Time-Barred Entities, all of which had incorporation dates prior to March 11, 2015. The trial court denied final judgment for Jonathan Logan and HLFIP Holding, Mailguard, Smart Communications Desoto, and Smart Communications Lee (collectively, the Remaining Entities), all of which had incorporation dates after March 11, 2015.

This timely appeal and cross-appeal followed.

## II.   ANALYSIS

On appeal, Engelke argues that the trial court erred in granting summary judgment for the Time-Barred Entities based on the statute of

---

[6] Thereafter, Engelke filed a four-count amended complaint raising new claims which did not include declaratory judgment, and multiple filings and hearings followed. However, because it is not relevant to the issue discussed herein, we do not go into the lengthy history.

limitations because there were disputed issues of material fact regarding when the cause of action accrued.

" 'Appellate courts review orders granting summary judgment de novo.'  A trial court's application of a statute of limitations to an action is a question of statutory interpretation; thus, the substantive issue before us is one we review de novo." *Hogg v. Vills. of Bloomingdale I Homeowners Ass'n,* 357 So. 3d 1271, 1274 (Fla. 2d DCA 2023) (citation omitted) (quoting *Greeley v. Wal-Mart Stores E., LP,* 337 So. 3d 478, 480 (Fla. 2d DCA 2022)).

The statute of limitations for a declaratory judgment action is determined by the nature of the underlying issue that the action seeks to resolve.  *See J.J. Gumberg Co. v. Janis Servs.,* 847 So. 2d 1048, 1050 (Fla. 4th DCA 2003) (explaining that the issues for determination in the declaratory judgment action were based on the insurance contract and that "a specific refusal to pay a claim is the breach which triggers the cause of action and begins the statute of limitations running" (quoting *Donovan v. State Farm Fire & Cas. Co.,* 574 So. 2d 285, 286 (Fla. 2d DCA 1991))).  Here, Engelke alleged in his complaint that he invested $100,000 with the Logans in exchange for 10% ownership of the Smart Jail Mail concept and the defendant entities but that the Logans have refused to recognize such ownership.  Accordingly, the nature of the underlying issue Engelke seeks to resolve through the declaratory judgment action relates to the terms of the oral agreement between Engelke and the Logans.  Specifically, whether Engelke's investment of $100,000 afforded him 10% interest in the Smart Jail Mail concept and the defendant entities, as Engelke alleged, or 10% interest in only the initial Smart Communications US entity, as the Logans argued.

Under section 95.11(3)(k), the statute of limitations for "[a] legal or equitable action on a contract, obligation, or liability not founded on a written instrument" is four years. And the limitations period beings to run "when the last element constituting the cause of action occurs." § 95.031(1).

> The elements of a cause of action for declaratory relief are well established. To be entitled to relief, the plaintiff must show:
>
> [T]here is a bona fide, actual, present practical need for the declaration; that the declaration should deal with a present, ascertained or ascertainable state of facts or present controversy as to a state of facts; that some immunity, power, privilege or right of the complaining party is dependent upon the facts or the law applicable to the facts; that there is some person or persons who have, or reasonably may have an actual, present, adverse and antagonistic interest in the subject matter, either in fact or law; that the antagonistic and adverse interests are all before the court by proper process or class representation and that the relief sought is not merely the giving of legal advice by the courts or the answer to questions propounded from curiosity.

*Riverside Ave. Prop., LLC v. 1661 Riverside Condo. Ass'n*, 325 So. 3d 997, 1000 (Fla. 1st DCA 2021) (quoting *May v. Holley*, 59 So. 2d 636, 639 (Fla. 1952)).

Here, Engelke brought a declaratory judgment action against the Logans and all defendant entities asking the trial court to determine Engelke's rights under the oral contract between him and the Logans. The oral agreement, as alleged in Engelke's complaint, was that in 2010 he "invested $100,000 of his money with Jonathan Logan and James Logan for ownership of 10% of the smart jail mail concept, including its intellectual property and software, generally referred to as 'Smart Jail Mail.' " He explained as follows:

9

> Prior to Engelke's investment and assistance, Jon Logan and James Logan represented to Engelke that the Smart Jail Mail concept needed his capital investment and business contacts to grow the concept and that his $100,000 investment would allow him to participate and have 10% ownership in the Smart Jail Mail concept and 10% ownership of all of the related Smart Jail Mail entities that they would form that would use the intellectual property and assets of the concept to provide Smart Jail Mail services.

Engelke further alleged that the Logans have refused to recognize his 10% ownership of the concept or the defendant entities and that as a result there is a bona fide actual present need for the declaration as to his ownership interests. Notably, he did not allege that the individual defendant entities refused to recognize his ownership interests. Rather, the entire claim flows through the Logans and their refusal to recognize his alleged interest. Engelke's "cause of action for declaratory relief did not accrue until a present practical need for the declaration occurred when the parties' interests became adverse and antagonistic" about the oral agreement. *See Riverside Ave. Prop., LLC*, 325 So. 3d at 1001.

Engelke's complaint contained general allegations of the Logans' refusal to recognize his alleged ownership interests. However, while he did not allege any specific date establishing when the Logans first refused to recognize his alleged ownership interests, the record establishes that, at the very latest, Engelke was aware of the formation of additional entities and his exclusion therefrom on March 11, 2015.

On March 11, 2015, Engelke was deposed in the Loan Case. He gave sworn testimony that he and James Logan agreed that in exchange for $100,000, he owned 10% of the shares in Smart Communications US. At the time of the agreement, he was not aware that there were other Smart Communications companies. He also never, at any point, had any discussions with James Logan about the fact that "different

10

companies would be formed to hold the contracts to different counties," nor did they discuss the prospect of Engelke purchasing shares in other Smart Communications companies. Rather, Engelke became aware of the other companies during the pendency of the Loan Case litigation through his attorney, as early as May 2014 or as late as March 11, 2015. According to his deposition testimony, Engelke believed that "[James Logan] had a strategy of dissolving the company that [he] had a piece in" while forming other companies and assigning them the right to use the Smart Jail Mail concept for no consideration in order to circumvent paying Engelke back.

Accordingly, the last element of Engelke's cause of action for declaratory relief occurred when he first became aware of the Logans' alleged actions in circumventing and excluding Engelke from the formation of the defendant entities, not when each new entity was formed. Engelke's knowledge of the creation of the first new entity utilizing the Smart Jail Mail concept to his detriment triggered the statute of limitations.[7] Engelke's declaratory judgment action as to the Time-Barred Entities was therefore outside the four-year limitation period, and the trial court did not err in entering summary judgment in their favor.

Affirmed in part; dismissed in part.

KELLY and LABRIT, JJ., Concur.

_____

Opinion subject to revision prior to official publication.

---

[7] Although logically this legal reasoning should apply to all the entities, the remaining entities are not properly before us. Accordingly, they are not entitled to relief on cross-appeal.

11