940 So.2d 526 (2006)
Christian OLIVER, Scott Vanover, and BlueSky Mast, Inc., a Florida corporation, Appellants,
v.
V. Charles STONE, Appellee.
No. 2D06-1064.
District Court of Appeal of Florida, Second District.
October 25, 2006.
*527 Scott A. Frick of Kass, Shuler, Solomon, Spector, Foyle & Singer, P.A., Tampa, for Appellants.
Stanford R. Solomon and Hallie S. Evans of The Solomon Tropp Law Group, P.A., Tampa, for Appellee.
ALTENBERND, Judge.
Christian Oliver and Scott Vanover, the defendants in an action brought by V. Charles Stone to judicially dissolve AntennaMast Solutions, Inc., and BlueSky Mast, Inc. (BlueSky), a nonparty in the action below, seek review of an unusual nonfinal order that was entered eleven months after rendition of the final judgment. We conclude that the trial court had no authority to enter the order in this proceeding. We reverse without prejudice to any right that Mr. Stone may have to obtain comparable relief in a new proceeding or within a pending bankruptcy proceeding.
Mr. Stone filed an action in 2003 against Mr. Oliver, Mr. Vanover, and AntennaMast seeking in part to dissolve AntennaMast under section 607.1430, Florida Statutes (2003). The lawsuit generally alleged that AntennaMast was a deadlocked corporation due to disagreements among the parties. Initially, Mr. Stone and Mr. Oliver each owned fifty percent of the stock of AntennaMast. Mr. Oliver allegedly appointed Mr. Vanover chief operating officer of AntennaMast without a meeting of *528 the board of directors or Mr. Stone's knowledge or consent. Thereafter, Mr. Oliver and Mr. Vanover created BlueSky, allegedly to compete with AntennaMast or otherwise interfere in its business.[1] Ultimately, the trial court determined that AntennaMast should be permitted to purchase all of Mr. Stone's interest in the corporation pursuant to section 607.1436.
During the discovery phase of this lawsuit, Mr. Stone sought to obtain from AntennaMast, BlueSky, Mr. Oliver, and Mr. Vanover copies of business records and other documents relating to the value of Mr. Stone's shares in AntennaMast. He scheduled many people for deposition, intending to question them about these documents. Mr. Oliver, Mr. Vanover, and AntennaMast maintained that the documents were confidential and sought protective orders from the trial court. In order to protect the confidential information, the trial court entered three protective orders.
The orders required the parties to execute a "Confidentiality Agreement" that is not included in our record. In general, these orders allowed production of documents and discovery in a manner that permitted Mr. Stone's lawyers, paralegals, and experts to have access to the documents but prohibited Mr. Stone himself from having personal access to the confidential information. The orders contained language providing that the documents not "be disclosed in any fashion to any other person, including but not limited to [Mr. Stone] without the consent of all parties or court order."
Mr. Stone retained a valuation expert who prepared a valuation report based on these documents. Although Mr. Stone apparently paid for the preparation of this report and it was introduced into evidence at the trial in this matter, Mr. Stone has never been allowed to review the report or the documents supporting it.
Following a nonjury trial, the trial court entered an "order of stock valuation" in October 2004. Mr. Stone's fifty percent interest in AntennaMast was determined to be worth approximately $76,000. The order instructed counsel for all parties to return to opposing counsel by December 15, 2004, all discovery and other confidential information obtained during discovery. The court retained jurisdiction to ensure compliance with its confidentiality order. The order states that the confidentiality order "shall not merge" into any subsequent order of the court.
The claims against Mr. Oliver and Mr. Vanover were dismissed with prejudice in March 2005. In April 2005, the trial court entered a final judgment based on its earlier stock valuation order, requiring AntennaMast to pay Mr. Stone approximately $80,000 for his ownership interest. As required by Florida Rule of Civil Procedure 1.560(c), the judgment contained language maintaining jurisdiction for compliance with the postjudgment discovery provisions of Florida Rule of Civil Procedure Form 1.977.
AntennaMast did not satisfy this judgment. As a result, Mr. Stone attempted to collect the judgment. AntennaMast filed for bankruptcy on July 19, 2005, and received the benefit of an automatic stay. 11 U.S.C. § 362. Thereafter, Mr. Stone sought relief in the bankruptcy court from the stay "solely to enable him to return to State Court and obtain . . . an order granting Stone full access" to the valuation report. The trustee for AntennaMast initially opposed this motion but later consented *529 to the request. The bankruptcy court entered an order permitting Mr. Stone to seek such relief in the circuit court.
Mr. Stone then filed a motion in the circuit court seeking access not only to the valuation report but also access to a large body of additional documents that apparently are still in the possession of Mr. Stone's attorney.[2] It does not appear that this motion was served on any of the parties to this action like a summons for a new lawsuit. The trustee for AntennaMast has not participated in the renewed proceedings in the circuit court, but apparently does not object to Mr. Stone viewing the valuation report.[3]
Mr. Oliver, Mr. Vanover, and BlueSky voluntarily appeared before the circuit court. Their attorney represented that they had no objection to Mr. Stone's receipt of the valuation report, but they objected to Mr. Stone's review of additional documents that they claimed were still confidential. The trial court modified its earlier protective orders to allow Mr. Stone access to the documents. As if it were a pretrial discovery problem, the new order required Mr. Oliver and Mr. Vanover to create a privilege log for the documents that still require confidentiality protection and contemplated that the parties would handle these disputes with additional hearings before the circuit court.
The trial court cannot be faulted for its willingness to be helpful in this unusual situation. On the other hand, we are hesitant to approve a procedure that is not recognized in the Florida Rules of Civil Procedure and results in a series of appealable nonfinal orders entered after final judgment. See Fla. R.App. P. 9.130(a)(4).
The trial court's method for granting Mr. Stone access to the documents was improper. It is well established that a trial court may reconsider and modify interlocutory orders at any time until final judgment is entered. See, e.g., Hunter v. Dennies Contracting Co., 693 So.2d 615 (Fla. 2d DCA 1997). All interlocutory proceedings, however, are merged into and disposed of by the final judgment. See Duss v. Duss, 92 Fla. 1081, 111 So. 382, 385 (1926). After entry of the final judgment, "[t]he trial court's authority to modify, amend, or vacate an order or final judgment after rendition of the final judgment is limited to the time and manner provided by rule or statute." Francisco v. Victoria Marine Shipping, Inc., 486 So.2d 1386, 1388-89 (Fla. 3d DCA 1986) (stating generally that a trial court loses jurisdiction to modify orders after the rendition of the final judgment and the expiration of the ten-day period to file a motion for rehearing). Id. at 1388 n. 2. Thus, once the trial court's judgment became final in this case, its inherent authority to reconsider and modify the interlocutory protective orders appears to have ceased. Thereafter, if a problem arose as a result of the content of the protective order and the parties were unable to resolve it without judicial intervention, the problem could only be addressed by a new order issued by a court with proper subject matter jurisdiction and with jurisdiction over the necessary parties.
Mr. Stone is seeking access to the valuation report and other financial documents, depositions, and exhibits. We first note that all of the parties seem to agree that *530 Mr. Stone can obtain a copy of the valuation report. Since the original protective orders allow documents to be subsequently obtained by "consent of all parties," at this point it appears Mr. Stone can obtain the valuation report without a court order.
As to the remaining documents, it does not appear that the scope of the bankruptcy court's order authorizes a lifting of its automatic stay for the purposes of the proceedings contemplated by the circuit court in its modification of the protective orders. We express some skepticism about the reasons that Mr. Stone is seeking this information. Mr. Stone claims he needs this information to collect upon a judgment. However, in light of the bankruptcy proceeding, that judgment is now merely a claim against the assets of AntennaMast's bankruptcy estate. Any assets that Mr. Stone might discover in gaining access to the documents would become assets of the bankruptcy estate. Nothing in this record suggests that his claim has a priority that promises a significant recovery in that proceeding. Thus the trustee, who is not a party to this appeal, seems to be using Mr. Stone as an agent to gather the assets of the estate. The bankruptcy court, albeit inadvertently, is using the circuit court as a magistrate to resolve discovery issues that seem to be matters better suited for resolution in the bankruptcy court.
Normally, when collection on a judgment becomes complex, the plaintiff initiates supplementary proceedings pursuant to section 56.29, Florida Statutes (2005). Such proceedings are served like a new lawsuit. § 56.29(3). For such a proceeding in this case to be served on AntennaMast, the bankruptcy court would probably need to issue another order. However, rather than seeking this order from the bankruptcy court, Mr. Stone sought to aid collection on the judgment by asking the trial court to modify the protective orders.
We are unconvinced that the language reserving jurisdiction in the nonfinal order on valuation or in the final judgment permits the trial court to reopen proceedings at any future date to adjust the language of its protective orders. The language of the protective orders permits future relief by "court order." It does not suggest that this specific circuit court in the original proceeding must be the court that provides relief. Our concerns are heightened in this case because the protective orders addressed some documents of BlueSky, which has never been a party to these proceedings.
Nothing in the protective orders suggests that the bankruptcy court cannot provide the future relief contemplated. If there are procedural reasons why the bankruptcy court cannot or will not provide that relief, it appears to this court that Mr. Stone would need to file a new state court action seeking declaratory relief or other relief to obtain the "court order" authorizing disclosure of these documents.
Reversed and remanded.
CASANUEVA and STRINGER, JJ., Concur.
NOTES
[1] BlueSky, an appellant on this appeal, was never made a party to the lawsuit in the trial court.
[2] In light of the provision in the valuation order requiring the return of all confidential documents, we are not entirely certain what documents Mr. Stone's attorney still possesses.
[3] The parties have not treated AntennaMast as an appellee. Without resolving the issue of whether the trustee is or should be a party to this appeal, we have not listed the trustee in the style.