# DISTRICT COURT OF APPEAL OF FLORIDA
## SECOND DISTRICT

_____

SOLOMON EVANS and EMILIE EVANS,

Appellants,

v.

GULF LANDINGS ASSOCIATION, INC.,

Appellee.

No. 2D2022-3709

_____

October 25, 2024

Appeal from the Circuit Court for Pasco County; Declan P. Mansfield, Judge.

Paul H. Bowen of Paul H. Bowen, P.A., Palm Harbor, for Appellants.

David J. Lopez of David J. Lopez, P.A., Tampa, for Appellee.

ATKINSON, Judge.

Appellants, Solomon Evans and Emilie Evans, appeal the trial court's final judgment in favor of Appellee, Gulf Landings Association, Inc. The trial court concluded that the law of the case doctrine barred the Evanses from relitigating the issue of whether they or the Association had the obligation to maintain an easement area and awarded the Association $6,400 for the Evanses' failure to maintain the area in question. We reverse and remand for a new trial on the issue of who had the maintenance obligation.

## Background

The Evanses own Lots 145 and 146 in the Gulf Landings residential community, a platted subdivision. Their home is situated on Lot 145. It is unclear what exactly, if anything, is situated on Lot 146.[1] However, given the discrete question of preclusive effect resolved by this appeal, this court need not and does not reach the merits issue of maintenance responsibility or any factual determination upon which that issue is contingent such as what is or is not located on the Evanses' land.

The Association notified the Evanses several times that pursuant to the Declaration of Covenants and Restrictions they were responsible for mowing and otherwise maintaining an easement area, which the Association contended was located on Lot 146. The Evanses sued in 2011 seeking a declaratory judgment that the Association must maintain the easement area (the 2011 Action). The trial court entered an "Order Granting [the Association]'s Motion for Final Summary Judgment," explaining as follows:

> By their complaint, [the Evanses] sought a judgment declaring that [the Association] is required to maintain the drainage easement area located on Lot 146 which lot is owned by [the Evanses]. [The Association] asserts that the applicable governing documents do not assign the responsibility of maintenance of the drainage easement to it and seeks final summary judgment in its favor on that issue. The court agrees with [the Association].
>
> . . . .

---

[1] The parties testified that Lot 146 contains either a swale or retention pond, and the plat in the record reflects an "L" shaped area labeled "Drainage and Utility Easement" that the Evanses contend is outside the boundaries of their lots. Although our dissenting colleague states that Lot 146 contains a swale and a drainage easement, the Evanses contend that "the Plat shows clearly that Lot 146 does not include the" easement.

2

. . . [T]he Court's sole declaration is which party is responsible for maintaining real property constituting the drainage easement area. The Court finds that [the Association]'s responsibility to maintain is set forth in Declaration of Covenants and Restrictions, as supplemented and amended. Article II(A)(3), as amended, unambiguously requires [the Association] to maintain the common properties comprising a part of the Common Area. It is undisputed that [the Evanses] are the owners of Lot 146 and that Lot 146 is neither a common property nor part of the Common Area. Moreover, Article VII(C) unambiguously obligates the owner of a lot to maintain the area of that lot affected by easements. That same article requires an owner to maintain improvements on the area unless maintenance for same is the responsibility of a public authority or utility company. It is undisputed that [the Association] is neither a public authority nor a utility company. In sum, the Court disagrees that the supplement and modifications recorded at Official Record Book 4434, Page 47, additionally obligates [the Association] to maintain lands or improvements constructed upon property not part of the Common Area.

For reasons unexplained by the record, the trial court did not reduce its summary judgment order to a final judgment. The record does not disclose that any party requested the entry of such a judgment or that any party attempted to appeal the summary judgment order. The parties have effectively stipulated through their briefing in this appeal that the 2011 Action was ultimately dismissed for lack of prosecution, though the record does not contain a copy of that order.

The Association then sued the Evanses in 2012 seeking a money judgment for the costs it incurred to maintain the easement area in question (the 2012 Action). At the beginning of trial, the trial court made what it described as "some preliminary disclosures" regarding the summary judgment order from the 2011 Action:

Therefore, the motion for summary judgment on behalf of the plaintiffs in that case, which were Mr. and Mrs. Evans,

3

was denied. And the defendant's motion for final summary judgment -- to wit, Gulf Landings Association -- was granted.

Therefore, that matter has been resolved. And that was back -- the order was May 22, 2012. That case is finalized. It's closed. There was no appeal. There was no motion for re-argument.

So that is the law of the case at this point. We are not going to re-litigate that matter.

The following exchange then occurred among the trial court, counsel for the Association, and the Evanses, who appeared below pro se:

THE COURT: However, let me indicate to you, Mr. and Mrs. Evans, that this [summary judgment] order denies affirmative relief. However, it concludes that you are responsible for the maintenance. Okay?

There is a difference and maybe there is no distinction there for you, but it is. In other words, in that Gulf Landings didn't ask for affirmative relief. However, the matter of who is responsible for the maintenance has been resolved.

Would that be your interpretation, Counsel?

[COUNSEL FOR THE ASSOCIATION]: Yes, Your Honor.

THE COURT: Okay. Mr. and Mrs. Evans, do you wish to be heard on that?

MR. EVANS: No.

THE COURT: Okay. We're not here to re-litigate that issue. Is that understood?

MR. EVANS: The responsibility for the --

THE COURT: -- maintenance is yours. We're not here to re-litigate that.

The trial court received evidence and argument.[2] Thereafter, it entered a $6,400 judgment in favor of the Association, concluding that

---

[2] Though not expressly invoking the doctrine of preservation, the Association points out that the Evanses "declined the opportunity" to challenge the trial court's decision prohibiting them from relitigating the maintenance obligation issue. Contrary to the Association's insinuation, the Evanses' failure to object with more precision does not preclude

4

the Evanses had "failed to maintain [Lot 146] as required by the Declaration" and that the Evanses' "duty to maintain the Lot was also previously established" in the 2011 Action.

## Analysis

The Evanses argue on appeal that the trial court erred by relying on the law of the case doctrine to preclude them from arguing at trial whether they or the Association had the responsibility to maintain the easement area in question and by otherwise affording preclusive effect to the summary judgment order from the 2011 Action. Our review is de novo. *See Amiri v. McGreal*, 323 So. 3d 242, 244–45 (Fla. 2d DCA 2021) ("The de novo standard of review applies to a trial court's ruling that a defendant is barred from obtaining relief on the grounds of res judicata or collateral estoppel." (quoting *Campbell v. State*, 906 So. 2d 293, 295 (Fla. 2d DCA 2004))); *SC Mota Assocs. v. Mota Pizza Rustica Corp.*, 358 So. 3d 823, 826 (Fla. 3d DCA 2023) ("Whether the law of the case doctrine applies is a question of law, and therefore our standard of review is de novo." (quoting *Pompano Masonry Corp. v. Anastasi*, 125 So. 3d 210, 212 (Fla. 4th DCA 2013))).

The Evanses are correct that the law of the case doctrine is inapplicable because the question regarding who had the maintenance obligation was not resolved *in an appeal* in the 2012 Action. *See Fla.*

---

appellate review. *See Wilcox v. State*, 143 So. 3d 359, 372–73 (Fla. 2014) (concluding that even though a pro se litigant failed to "articulate a specific and contemporaneous objection," "[g]iven the leniency courts generally afford to pro se litigants in technical matters . . . Wilcox did enough, although it was not very much, to indicate his objection to the line of questioning, and, therefore, sufficiently preserved the issue for appeal as a pro se litigant" (citation omitted)). Despite the trial court's initial decision, the trial transcript reflects that throughout the trial the Evanses returned to their claim that the Association was responsible for maintaining the easement area.

5

*Dep't of Transp. v. Juliano*, 801 So. 2d 101, 105 (Fla. 2001) ("The doctrine of the law of the case requires that questions of law actually decided *on appeal* must govern *the case* in the same court and the trial court, through all subsequent stages of the proceedings." (emphasis added)). As such, the parties devote most of their briefing addressing whether the doctrine of collateral estoppel supports the trial court's decision to preclude the Evanses from relitigating the maintenance obligation issue that was decided in the summary judgment order from the 2011 Action. *See Dade Cnty. Sch. Bd. v. Radio Station WQBA*, 731 So. 2d 638, 644 (Fla. 1999) ("[I]f a trial court reaches the right result, but for the wrong reasons, it will be upheld if there is any basis which would support the judgment in the record."). We conclude it does not. Although the parties actually litigated the issue regarding the maintenance obligation via summary judgment in the 2011 Action, collateral estoppel does not apply because the 2011 Action did not result in the entry of a final decision on the merits.

"Collateral estoppel is a judicial doctrine which in general terms prevents identical parties from relitigating the same issues that have already been decided." *Dep't of Health & Rehab. Servs. v. B.J.M.*, 656 So. 2d 906, 910 (Fla. 1995) (citing *Mobil Oil Corp. v. Shevin*, 354 So. 2d 372, 374 (Fla. 1977)). For the doctrine to apply, the issues must have been both "*actually litigated* in a prior proceeding" and "fully litigated and determined in a contest which results in a final decision of a court of competent jurisdiction." *Id.* "For an issue to have been 'fully litigated,' a court of 'competent jurisdiction' must enter a final decision." *Lucky Nation, LLC v. Al-Maghazchi*, 186 So. 3d 12, 14 (Fla. 4th DCA 2016) (quoting *Mobil Oil Corp.*, 354 So. 2d at 374); *see also City of Oldsmar v. State*, 790 So. 2d 1042, 1046 n.4 (Fla. 2001) ("[T]he particular matter must be fully litigated and determined in a contest that results in a final

6

decision of a court of competent jurisdiction." (citing *B.J.M.*, 656 So. 2d at 910)); *Neapolitan Enters. v. City of Naples*, 185 So. 3d 585, 591 (Fla. 2d DCA 2016) ("When an issue of fact or law is actually litigated *and* determined by a valid and final judgment, and the determination is *essential to the judgment*, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." (emphasis added) (quoting *Cook v. State*, 921 So. 2d 631, 634 (Fla. 2d DCA 2005))). Moreover, the final decision rendered in the prior proceeding must be a decision on the merits. *See Neapolitan Enters.*, 185 So. 3d at 592 (rejecting application of collateral estoppel because the final decision rendered in the prior proceeding was not on the merits); *Desai v. Bank of N.Y. Mellon Tr. Co.*, 240 So. 3d 729, 731 (Fla. 4th DCA 2018) ("Likewise, the doctrines of res judicata and collateral estoppel did not prevent BNY from filing a second foreclosure complaint and relitigating those issues despite the involuntary dismissal with prejudice of its prior action where the case was not decided on the merits." (citing *Singleton v. Greymar Assocs.*, 882 So. 2d 1004, 1007–08 (Fla. 2004))).

As applied to the Evanses' case, it is undisputed that the parties actually litigated the issue of who had the maintenance obligation on the easement area in question in the 2011 Action, which resulted in the trial court's entry of an order granting the Association's motion for summary judgment. However, for collateral estoppel to apply there must also have been a "final decision" in which the issue was determined. *See B.J.M.*, 656 So. 2d at 910 (requiring the issue to have been "fully litigated and determined in a contest which results in a final decision"). The question in this appeal is whether that requirement for a final decision has been met under the circumstances of this case, in which the issue resolved by summary judgment was never reduced to a final judgment.

For the purpose of invoking jurisdiction for appellate review, "an order merely granting a motion for summary judgment is not a final order." *Wahl v. Taylor*, 926 So. 2d 488, 489 (Fla. 2d DCA 2006); *see also* Fla. R. App. P. 9.030(b)(1)(A) (providing that district courts of appeal have jurisdiction to review "final orders of trial courts not directly reviewable by the supreme court or a circuit court"). This is because "[a]n order granting only summary judgment merely establishes an entitlement to judgment, but is not itself a judgment." *Mid-Continent Cas. Co. v. Flora-Tech Plantscapes, Inc.*, 225 So. 3d 336, 338 (Fla. 3d DCA 2017) (quoting *Lidsky Vaccaro & Montes, P.A. v. Morejon*, 813 So. 2d 146, 149 (Fla. 3d DCA 2002)); *see also Better Gov't Ass'n of Sarasota Cnty. v. State*, 802 So. 2d 414, 415 (Fla. 2d DCA 2001) ("The order that grants a motion for summary judgment . . . lacks the finality of an order entering judgment in favor of a party and against the party opponent." (citing *Moore Int'l Trucks, Inc. v. Foothill Cap. Corp.*, 560 So. 2d 1301 (Fla. 2d DCA 1990))); *Tarik, Inc. v. NNN Acquisitions, Inc.*, 17 So. 3d 912, 913 (Fla. 4th DCA 2009) ("Summary judgment is 'interlocutory in character' and does not automatically result in the entry of final judgment." (quoting Fla. R. Civ. P. 1.510(c) (2009))). Concededly, the standard for collateral estoppel, by contrast, is often described in recorded opinions without reference to a *final judgment* or *final order*, instead imposing only a requirement that there be a *final decision*. *See City of Oldsmar*, 790 So. 2d at 1046 n.4 (requiring the issue to have been determined "in a contest that results in a final decision"); *Forty One Yellow, LLC v. Escalona*, 305 So. 3d 782, 788 (Fla. 2d DCA 2020) ("For the doctrine of collateral estoppel to preclude relitigation of an issue in a subsequent action, . . . the particular matter must have been fully litigated and determined in a contest resulting in a final decision of a court of competent jurisdiction." (quoting *Campbell*, 906 So. 2d at 295)); *Pearce v. Sandler*, 219 So. 3d 961, 965 (Fla. 3d DCA

8

2017) ("Collateral estoppel precludes re-litigating an issue where the same issue has been fully litigated by the parties or their privies, and a final decision has been rendered by a court." (emphasis omitted) (quoting *Mortg. Elec. Registration Sys., Inc. v. Badra*, 991 So. 2d 1037, 1039 (Fla. 4th DCA 2008))). On the other hand, plenty of recorded opinions recognize that collateral estoppel requires the precluded issue to have been determined by a final "judgment." *See Houston v. City of Tampa Firefighters & Police Officers' Pension Fund Bd. of Trs.*, 303 So. 3d 233, 246 (Fla. 2d DCA 2020) ("[T]he determination of the issue in the prior litigation must have been a critical and necessary part of the *judgment* in that action." (emphasis added) (quoting *Lary v. Ansari*, 817 F.2d 1521, 1524 (11th Cir. 1987))); *Neapolitan Enters.*, 185 So. 3d at 591 ("When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." (quoting *Cook*, 921 So. 2d at 634)); *Cook*, 921 So. 2d at 634 ("Issue Preclusion—General Rule[:] When an issue of fact or law is actually litigated and determined by a valid and final judgment . . . ." (alteration in original) (quoting Restatement (Second) of Judgments § 27 (Am. L. Inst. 1982))); *Gov't Emps. Ins. v. Kisha*, 163 So. 3d 1266, 1268 (Fla. 5th DCA 2015) ("Thus, '[c]ollateral estoppel . . . serves as a bar to relitigation of an issue which has already been determined by a valid judgment.' " (alteration in original) (quoting *Stogniew v. McQueen*, 656 So. 2d 917, 919 (Fla. 1995))); *West v. Kawasaki Motors Mfg. Corp., U.S.A.*, 595 So. 2d 92, 94 (Fla. 3d DCA 1992) (describing res judicata and collateral estoppel as barring "a pending action based on a final judgment entered in a prior action").

Any distinction between the language employed to describe the standard for an appealable order that confers on an appellate court the

jurisdiction for appellate review, on the one hand, and the standard for a final decision with preclusive effect under the doctrine of collateral estoppel, on the other hand, is without a pertinent difference, at least under the circumstances of this case. First, like a nonfinal order ineligible for appellate review, the summary judgment order in the 2011 Action lacked finality because further judicial labor in the cause remained—the entry of a final judgment. More importantly, without a final judgment, an interlocutory decision such as the order granting the summary judgment motion in the 2011 Action is not final because the court retains inherent authority to revisit it until entry of a final judgment. *See Oliver v. Stone*, 940 So. 2d 526, 529 (Fla. 2d DCA 2006). Once a trial court enters a final order, its "authority to modify, amend, or vacate an order or final judgment . . . is limited to the time and manner provided by rule or statute." *Id.* (quoting *Francisco v. Victoria Marine Shipping, Inc.*, 486 So. 2d 1386, 1388–89 (Fla. 3d DCA 1986)); *see, e.g.*, Fla. R. Civ. P. 1.540(b) (providing specified grounds for seeking relief from "a final judgment, decree, order, or proceeding"). Before that point, "[i]t is well established that a trial court may reconsider and modify interlocutory orders at any time until final judgment is entered." *Oliver*, 940 So. 2d at 529 (citing *Hunter v. Dennies Contracting Co.*, 693 So. 2d 615, 616 (Fla. 2d DCA 1997)); *see also Tank Tech, Inc. v. Valley Tank Testing, L.L.C.*, 244 So. 3d 383, 391–92 (Fla. 2d DCA 2018) (rejecting an argument that, upon rehearing of its order granting summary judgment, the trial court should not have considered a supplemental affidavit that had not been "submitted prior to the original summary judgment hearing" because the trial court "had not yet entered *final* judgment" and until such time was permitted to "reconsider and modify" its "interlocutory" summary judgment order (emphasis added) (quoting *LoBello v. State Farm Fla. Ins.*, 152 So. 3d 595, 600 (Fla. 2d DCA 2014))).

10

In other words, the issue has not been "fully litigated and determined in a contest which results in a final decision," *see B.J.M.*, 656 So. 2d at 910, because until the court reduces the order to a final judgment, the court has not finalized its decision on the matter such that it is irrevocably beyond its authority to revisit it and alter the resolution of the issue, *see LoBello*, 152 So. 3d at 600 ("An order granting summary judgment is an interlocutory order, and a trial court has inherent authority to reconsider and modify its interlocutory orders." (quoting *AC Holdings 2006, Inc. v. McCarty*, 985 So. 2d 1123, 1125 (Fla. 3d DCA 2008))).

What is more, for the purpose of collateral estoppel, the basis on which that final judgment is entered is important because a decision *on the merits* is required to give a determination preclusive effect. *See Neapolitan Enters.*, 185 So 3d at 591–92; *Desai*, 240 So. 3d at 731; *see also Miami Dade Coll. v. Nader + Museu I, LLLP*, 388 So. 3d 121, 125 (Fla. 3d DCA 2023) ("[C]ollateral estoppel did not apply because the matter was not fully litigated or determined in the first lawsuit as the trial court's decision was not merits based."). The final judgment in the 2011 Action was not an order on the merits of the dispute for which the interlocutory summary judgment decision was based. Rather, the final judgment disposed of the case for lack of prosecution, which is not a merits decision that can trigger preclusive doctrines such as res judicata or collateral estoppel. *See Se. Mortg. Co. v. Sinclair*, 632 So. 2d 677, 678 (Fla. 2d DCA 1994) ("A dismissal for lack of prosecution . . . is not an adjudication on the merits."); *Tapper v. Taunton*, 371 So. 2d 595, 595 (Fla. 1st DCA 1979) ("A dismissal for lack of prosecution is not an adjudication on the merits and does not bar subsequent action on the same subject matter . . . ."); *cf. Murphy White Dairy, Inc. v. Simmons*, 405 So. 2d 298, 299 n.3 (Fla. 4th DCA 1981) ("A dismissal for lack of

11

prosecution is a final order for purposes of appeal, but not final—that is, without prejudice—so as to be res judicata."). In other words, while the 2011 Action did ultimately end in a final judgment of dismissal for failure to prosecute, that does not make what was until that time a nonfinal decision a final one; rather, the court having divested itself of authority to revisit or finalize the summary judgment order, any finality to the 2011 Action is not on the merits. *See Se. Mortg. Co.*, 632 So. 2d at 678; *Murphy White Dairy, Inc.*, 405 So. 2d at 299 n.3; *Tapper*, 371 So. 2d at 595.

The Evanses could have effectuated a different outcome by seeking the entry of an appealable final judgment consistent with the order granting the Association's motion for summary judgment; the Association could have done the same. Both parties, for reasons not illuminated in the record, seemed to have failed to act. The result is a final, nonmerits determination that the Evanses failed to prosecute the 2011 Action and a determination by the court that the Association was entitled to summary judgment—the latter of which is and will forever remain nonfinal.

The dissent attempts to dissect the concept of finality, insisting the trial court's summary judgment order was sufficiently final for purposes of preclusive effect under the doctrine of collateral estoppel while acknowledging the order was not final for purposes of appeal. But this anatomization is undertaken without support from any authority indicating that the finality analysis for appellate review and the finality analysis for the application of preclusive doctrines such as collateral estoppel are appreciably distinct in any way that is pertinent to this case. Instead, the dissent suggests that the order granting summary judgment was not interlocutory at all and for additional support points to a common practice of this court by which jurisdiction is relinquished to the trial court for entry of an appealable order when a party appeals a

12

nonappealable order.  First, such a practice does not undermine the nonfinal nature of an order granting a motion for summary judgment, but rather *presumes* the nonfinality of the order—consistent with case law, *see, e.g., Wahl*, 926 So. 2d at 489; *Tarik, Inc.*, 17 So. 3d at 913— such that the practice of relinquishment for entry of an *additional, final* order is the only alternative to dismissal for lack of appellate jurisdiction; in other words, if the order appealed was not nonfinal, then no relinquishment would be necessary.  Moreover, belying the dissent's assertion that employment of the described practice by prior panels of this court has binding precedential effect on subsequent panels, "relinquish[ment] to the trial court for entry of an appropriate final [order]" is merely something that this court "*[o]rdinarily*" does, *see Discount Fireworks of Cent. Fla., Inc. v. Sarasota County*, 922 So. 2d 433, 434 (Fla. 2d DCA 2006) (emphasis added), and the practice cannot be considered mandatory under a rule of appellate procedure that provides that an appeal is subject to dismissal "if a notice of appeal is filed before rendition of a final order" and merely affords the appellate court "discretion" to "grant the parties additional *time* to obtain a final order from the lower tribunal," Fla. R. App. P. 9.110(*l*) (emphasis added). Furthermore, the practice of relinquishment of jurisdiction itself is at worst unnecessary and at best a misnomer, given that this court has no appellate jurisdiction to review a nonfinal, nonappealable order and thus has none to relinquish to a trial court that itself "retains jurisdiction to render a final order."  *See id.* (providing that "the lower tribunal *retains jurisdiction* to render a final order, and *if* a final order is rendered before dismissal of the premature appeal, the premature notice of appeal *will* vest jurisdiction in the [appellate] court to review the final order" and that, "[b]efore dismissal, the [appellate] court *in its discretion* may grant

13

the parties additional time to obtain a final order from the lower tribunal" (emphasis added)).

Finally, by recasting the collateral estoppel question as one of a discretionary denial of the right to present additional evidence, the dissent veers off from what the parties argued as—and the circumstances indicate was—an issue of the preclusive effect of the summary judgment order entered in the 2011 Action. And despite insinuations to the contrary, the dissent has no way of knowing whether the Evanses had new or different evidence *or arguments* to present, had they been permitted to do so. The trial court declined to take any evidence or argument on the issue *because* it concluded that the summary judgment order in the 2011 Action had preclusive effect (mistakenly attributing that effect to the law of the case doctrine). The preclusive effect of the prior order is the issue in this appeal. And the dissent's tautological characterization of the issue as a question of the exclusion of additional evidence on an already-litigated matter *presumes* the preclusive effect of the prior court's determination—or at least sidesteps it with the effect of improperly addressing what should be a *de novo* review of a finding of preclusive effect under the abuse of discretion standard applicable to evidentiary issues. *See Amiri*, 323 So. 3d at 244–45 ("The de novo standard of review applies to a trial court's ruling that a defendant is barred from obtaining relief on the grounds of res judicata or collateral estoppel." (quoting *Campbell*, 906 So. 2d at 295)); *see also Fernandez v. Cruz*, 341 So. 3d 410, 412 (Fla. 3d DCA 2022) (same); *Aronowitz v. Home Diagnostics, Inc.*, 174 So. 3d 1062, 1065 (Fla. 4th DCA 2015) (same); *Criner v. State*, 138 So. 3d 557, 558 (Fla. 5th DCA 2014) (same); *Felder v. State, Dep't of Mgmt. Servs., Div. of Ret.*, 993 So. 2d 1031, 1034 (Fla. 1st DCA 2008) (same). What limiting principle would

14

prevent the dissent's transmogrification from being applied in other easily imaginable collateral estoppel scenarios escapes this author.

The concern for the conservation of judicial resources and the avoidance of perverse incentives in the litigation process is understandable. However, pursuant to controlling authority describing the parameters of the collateral estoppel doctrine, the prior resolution of the issue cannot have preclusive effect because it was not finally decided. Because the 2011 Action did not result in a final decision regarding the issue of who had the maintenance obligation for the easement area in question, collateral estoppel did not preclude the Evanses from relitigating that issue in the 2012 Action initiated by the Association. The Evanses maintained that they did not have the maintenance obligation, and there was no valid basis for the trial court to preclude the Evanses from fully presenting their position on that issue at trial. Accordingly, we reverse and remand for a new trial limited to the issue of who had the maintenance obligation.[3] *Cf. Barrientos v. Hyre*, 805 So. 2d 981, 982 (Fla. 2d DCA 2001) ("The error requiring a new trial affected only the issue of comparative fault, and the new trial must be limited to that issue.").

Reversed and remanded with instructions.


SLEET, C.J., Concurs.
LaROSE, J., Dissents with opinion.

---

[3] Because we reverse and remand for a new trial, we need not reach the Evanses' additional argument that the trial court erred by ruling (whether explicitly or implicitly) that the Evanses own the easement area in question. That question is necessarily subsumed within the issue of whether the Evanses or the Association have the obligation to maintain the easement area, which must now be resolved upon remand due to the trial court's erroneous conclusion that its resolution in the 2011 Action had preclusive effect.

15

LaROSE, Judge, Dissenting.

The litigation between the homeowners, Solomon and Emilie Evans, and their homeowners' association, Gulf Landings Association, Inc. (the HOA), has a long, complicated, and rancorous history. They have battled for over a dozen years. The issue has remained the same: who must mow the grass and otherwise maintain a drainage easement. In 2012, a trial court unequivocally answered the question: the Evanses. Because of its cramped view of finality and its conflation of finality and appealability, the majority condemns the parties to continued costly and time-consuming litigation.

I would affirm the trial court's 2022 final judgment. The issue in dispute was resolved years ago. On our record, I cannot see that the trial court abused its discretion in limiting the evidence admitted at a 2022 bench trial. Because the record and controlling case law precludes the Evanses' attempt to revisit settled history, affirmance is proper. *See Fed. Nat'l Mortg. Ass'n v. Trinidad*, 358 So. 3d 754, 758 (Fla. 4th DCA 2023) ("[C]ollateral estoppel is an equitable doctrine, and is not to be invoked where it will lead to pernicious results or where its application will result in a manifest injustice." (alteration in original) (quoting 32A Fla. Jur. 2d *Judgments & Decrees* § 111 (2022 ed.))).

The majority explains that "collateral estoppel does not apply because the 2011 [lawsuit] did not result in the entry of a final decision on the merits." This reasoning elides or distorts inconvenient record evidence and relevant case law in search[4] of a result.

---

[4] The majority observes that, in this appeal, "the Evanses contend that 'the Plat shows clearly that Lot 146 does not include the' easement." This contention has evolved quite a bit since the Evanses initiated litigation against the HOA in 2011, because "[b]y their complaint, [the Evanses] sought a judgment declaring that [the HOA] is required to maintain the drainage easement area located on Lot 146 which lot is

Seemingly, the majority rigidly reasons that an order entering summary judgment has preclusive effect; an order granting a motion for summary judgment does not. But context matters. On this record, I reject the majority's elevation of form over substance. Respectfully, I dissent.

## Background

The majority omits certain relevant details contained in our record. Consequently, I offer a more fulsome review.

The Evanses own Lots 145 and 146, contiguous parcels in the Gulf Landings development. Their home stands on Lot 145; Lot 146 contains a retention swale. *See Swale*, Merriam-Webster Dictionary Online, https://www.merriam-webster.com/dictionary/swale (last visited Jan. 23, 2024) (defining "swale" as "a low-lying or depressed and often wet stretch of land"). The swale holds a drainage easement. *See Easement, Black's Law Dictionary* 622 (Deluxe 10th ed. 2014) (defining "easement" as "[a]n interest in land owned by another person, consisting in the right to use or control the land . . . for a specific limited purpose (such as to cross it for access to a public road)").

---

owned by [the Evanses]." Seemingly, over the years the easement has relocated itself.

In any event, and notwithstanding the Evanses' mutually inconsistent and evolving positions on the issue, the Evanses' newfound argument has no bearing on the resolution of this appeal. In fact, the majority tells us, "The preclusive effect of the prior order is the issue in this appeal." Should the majority be suggesting there is merit to the Evanses' most recent argument in their sustained, decade-long effort to avoid responsibility for maintaining the drainage easement, I fear mischief in future proceedings between these parties. *Cf. PDK Lab'ys, Inc. v. U.S. DEA*, 362 F.3d 786, 799 (D.C. Cir. 2004) (Roberts, J., concurring in part and concurring in the judgment) (observing that judicial restraint cautions that when "it is not necessary to decide more, it is necessary not to decide more").

17

Relying on its governing documents, the HOA, in August 2010, notified the Evanses that they were responsible for mowing and otherwise maintaining the drainage easement. The Evanses sued the HOA in 2011 (Case Number 2011-CA-1675), seeking a declaration that the HOA had the maintenance obligation.

The parties litigated this issue thoroughly. In 2012, the trial court heard argument on competing summary judgment motions. The trial court granted the HOA's motion. The trial court explained:

> By their complaint, [the Evanses] sought a judgment declaring that [the HOA] is required to maintain the drainage easement area located on Lot 146 which lot is owned by [the Evanses]. [The HOA] asserts that the applicable governing documents do not assign the responsibility of maintenance of the drainage easement to it and seeks final summary judgment in its favor on that issue. The [trial] court agrees with [the HOA].
>
> . . . .
>
> . . . [T]he Court's sole declaration is which party is responsible for maintaining real property constituting the drainage easement area. The Court finds that [the HOA]'s responsibility to maintain is set forth in Declaration of Covenants and Restrictions, as supplemented and amended. Article II(A)(3), as amended, unambiguously requires [the HOA] to maintain the common properties comprising a part of the Common Area. It is undisputed that [the Evanses] are the owners of Lot 146 and that Lot 146 is neither a common property nor part of the Common Area. Moreover, Article VII(C) unambiguously obligates the owner of a lot to maintain the area of that lot affected by easements. That same article requires an owner to maintain improvements on the area unless maintenance for same is the responsibility of a public authority or utility company. It is undisputed that [the HOA] is neither a public authority nor a utility company. In sum, the Court disagrees that the supplement and modifications recorded at Official Record Book 4434, Page 47, additionally obligates [the HOA] to maintain lands or improvements constructed upon property not part of the Common Area.

The Evanses sought rehearing. The trial court conducted a hearing on the Evanses' motion and denied rehearing. The Evanses did not appeal the adverse 2012 summary judgment order.

For its part, the HOA, relying on the 2012 summary judgment order, sought to recover its maintenance costs. The trial court halted that effort. It reasoned that because the HOA never pursued affirmative relief in the 2011 lawsuit it would have to file a new lawsuit.

Unsurprisingly, the 2011 lawsuit languished on the docket. After all, it seems that everyone assumed that the 2011 lawsuit was over. Having obtained an order finding that the Evanses had to maintain the drainage easement and having been rebuffed by the trial court in its effort to seek damages in the 2011 lawsuit, the HOA moved on. In October 2016, the trial court dismissed the 2011 lawsuit for lack of prosecution.

But the story goes on. The HOA, in December 2012, as admonished by the trial court, filed a new lawsuit (Case Number 2012-CA-7895). It sought injunctive relief against and reimbursement of its maintenance costs from the Evanses. That case dragged on. Finally, in January 2021, the HOA filed a summary judgment motion. The HOA stated that

> the [Evanses] are the owners of Lot 146, that the [Evanses] are legally bound by the terms and conditions of the Declaration, that the Declaration requires the [Evanses] to maintain the retention swale located upon Lot 146, that the Declaration empowers the [HOA] to enter upon Lot 146 to maintain the retention swale if the [Evanses] fail to do so themselves, that the [HOA] is empowered to assess the [Evanses] for the costs of entering upon Lot 146 and maintaining the retention swale, and that the [Evanses] are liable for payment of the assessments derived from the costs to the [HOA] for entering upon Lot 146 and maintaining the retention swale.

19

In response, the Evanses' then-counsel filed a January 29, 2021, summary judgment motion. The motion crystallized the issue: "The determination of who is obligated to provide maintenance of the retention ponds is the only issue in this action." Thereafter, proceeding pro se, the Evanses filed a July 15, 2022, summary judgment motion on the eve of a bench trial. This motion offered that

> the drainage area on the parcel can only be a retention pond not a swale or ditch that is part of the stormwater management system providing drainage for all []parcels in Gulf Harbors Sea Forest Unit 1C. . . . The [HOA] has not shown or justified the assertion that parcel owners are responsible for stormwater management system's retention ponds on their property.

Despite a change in nomenclature from "swale" or "ditch" to "retention pond," the Evanses resolved to relitigate the same issue animating their 2011 lawsuit. Our record does not reflect the disposition of the parties' January 2021 motions.

We do know that a bench trial ensued. The trial court set some ground rules. Significantly, after quoting the substantive portions of the 2012 summary judgment order, the trial court declared, "[T]hat matter has been resolved. . . . That case is finalized. It's closed. There was no appeal. There was no motion for re-argument.[5] So that is the law of the case at this point.[6] We are not going to re-litigate that matter."

_____

[5] As noted above, the Evanses filed an unsuccessful motion for rehearing.

[6] The law of the case doctrine is inapplicable; no one appealed the 2012 summary judgment order. *See Fla. Dep't of Transp. v. Juliano*, 801 So. 2d 101, 105 (Fla. 2001) ("The doctrine of the law of the case requires that questions of law actually decided on appeal must govern the case in the same court and the trial court, through all subsequent stages of the proceedings."). Nonetheless, the trial court's error does not affect what I believe to be the correct disposition. *See City of Clearwater v. Sch. Bd. of Pinellas Cnty.*, 905 So. 2d 1051, 1057 (Fla. 2d DCA 2005) ("[T]he 'tipsy

The trial court proceeded to receive argument and evidence.

During his opening statement, Mr. Evans attempted to raise the arguments made in the pro se summary judgment motion. The trial court forbade it, explaining that the motion was untimely. *See* Fla. R. Civ. P. 1.510(b) ("The movant must serve the motion for summary judgment at least 40 days before the time fixed for the hearing.").

Thereafter, while testifying in his defense, Mr. Evans again attempted to explain why he was not responsible for maintaining the drainage easement:

> In the period of time that I have owned it, I learned that the whole area is an easement. That wasn't presented to the judge. It was presented to my attorneys, but it was never presented to the judge.
>
> One of the county officers certified to the commissioners that it's certified all easement.

This testimony elicited an objection from the HOA that the trial court sustained.

The HOA called the community association manager to testify. She also serves as the HOA's records custodian. The manager testified that as of July 1, 2022, the Evanses owed $7,918 for the HOA to maintain the drainage easement.[7]

In his case-in-chief, Mr. Evans recalled the manager to testify. He asked her about her familiarity with the "zoning requirements for the -- properties within our community." Specifically, he inquired whether she

---

coachman' doctrine . . . allows an appellate court to affirm a trial court decision that 'reaches the right result, but for the wrong reasons' so long as 'there is any basis which would support the judgment in the record.' " (quoting *Dade Cnty. Sch. Bd. v. Radio Station WQBA*, 731 So. 2d 638, 644 (Fla. 1999))).

[7] The trial court was engaged in the bench trial. It questioned the property manager about multiple charges that appeared to be duplicative or otherwise unreasonable, securing begrudging concessions.

was aware what was the required lot size for Gulf Landings. This question elicited a swift relevancy objection. Mr. Evans responded that the information was necessary because "[i]f the whole area, the water, the stormwater system belongs -- the responsibility to someone else under one of these codes, then I'm not responsible to mow it." The trial court would not allow such questioning:

> Well, that's your position. But the problem is that's already been decided by [the 2012 summary judgment order]. In a previous case [the trial court] decided you are responsible for mowing that property well, I shouldn't say that. You're responsible for maintaining that property. That's what he decided in the case of 2011-CA-1675.

Shortly thereafter, the Evanses rested.

The trial court later rendered a written judgment for $6,400 in favor of the HOA. In relevant part, the judgment stated:

3. [Lot 146] is subject to the Declaration of Covenants and Restrictions Gulf Harbors Sea Forest (O.R. Book 1234, Page 625, et seq of the Public Records of Pasco County Florida), ("the Declaration") and any amendments thereto.

. . . .

5. Pursuant to Article 2, Section C, Subsections 4 & 5 of the Declaration, the [Evanses] must maintain [Lot 146], including any easements, and/or drainage ditches or swales.

6. Article 2, Section C, Subsection 4 of the Declaration also provides that if a lot owner fails to maintain the lot, the [HOA] has the right to enter upon the lot to carry out the necessary maintenance and such charges shall become an assessment against the lot.

7. The [Evanses] have failed to maintain [Lot 146] as required by the Declaration and the [HOA] has carried out mowing of the Lot as permitted by the Declaration.

8. The [Evanses]' duty to maintain the Lot was also previously established by Judge Bray in [the 2012 summary judgment order] . . . .

22

9.  [The 2012 summary judgment order] found that the [Evanses] are required to maintain the areas of [Lot 146] affected by easements.

## Analysis

The Evanses contend that "the issue of ownership of the [s]wale was not [previously] determined and the evidence should not have been precluded" at the July 2022 bench trial. But the 2012 summary judgment order did, indeed, address that very issue. Retreating to an alternate theory, they assert that the 2012 summary judgment order was not final. They contend that "[t]he issue presented here was never appealed, was not a final judgment, and was not [raised] in the same case."

"[C]ollateral estoppel bars relitigation of the same issues between the same parties in connection with a different cause of action." *Topps v. State*, 865 So. 2d 1253, 1255 (Fla. 2004); *see also Dep't of Health & Rehab. Servs. v. B.J.M.*, 656 So. 2d 906, 910 (Fla. 1995) ("Collateral estoppel is a judicial doctrine which in general terms prevents identical parties from relitigating the same issues that have already been decided.").

Courts examine several factors to assess whether the prior resolution of an issue has preclusive effect in a subsequent proceeding:

> (1) an identical issue must have been presented in the prior proceedings; (2) the issue must have been a critical and necessary part of the prior determination; (3) there must have been a full and fair opportunity to litigate that issue; (4) the parties in the two proceedings must be identical; and (5) the issues must have been actually litigated.

*Cook v. State*, 921 So. 2d 631, 634 (Fla. 2d DCA 2005) (quoting *Goodman v. Aldrich & Ramsey Enters., Inc.*, 804 So. 2d 544, 546-47 (Fla. 2d DCA 2002)); *see also Marquardt v. State*, 156 So. 3d 464, 481 (Fla. 2015) (same); *Fernandez v. Cruz*, 341 So. 3d 410, 413 (Fla. 3d DCA 2022)

23

(same); *Lucky Nation, LLC v. Al-Maghazchi*, 186 So. 3d 12, 14 (Fla. 4th DCA 2016) (same); *Larimore v. State*, 76 So. 3d 1121, 1123 (Fla. 1st DCA 2012) (same).

I readily conclude that all boxes are checked.

**(1)  An identical issue was presented in the prior proceeding**

The majority admits that "it is undisputed that the parties actually litigated the issue of who had the maintenance obligation on the easement area in question in [Case Number 2011-CA-1675]."  Seemingly, we agree on this point.

**(2)  The issue must have been a critical and necessary part of the prior determination**

An issue is a critical and necessary part of the prior proceeding where its determination is essential to the ultimate decision.  *See Porter v. Saddlebrook Resorts, Inc.*, 679 So. 2d 1212, 1215 (Fla. 2d DCA 1996).  Without dispute, the maintenance obligation was the only issue raised in the 2011 lawsuit.  Indeed, that is exactly what the 2012 summary judgment order determined:

> [The HOA] asserts that the applicable governing documents do not assign the responsibility of maintenance of the drainage easement to it and seeks final summary judgment in its favor on that issue.  The [trial] court agrees with [the HOA].
>
> . . . .
>
> . . . [T]he Court's sole declaration is which party is responsible for maintaining real property constituting the drainage easement area.

**(3)  There must have been a full and fair opportunity to litigate that issue**

The Evanses contend that they were not afforded the opportunity to litigate the key–indeed only–issue in the 2011 lawsuit.  They ignore reality.  They bolster this ill-conceived argument by telling us that they could not appeal the 2012 summary judgment order.  They complain

24

that, as the losing party, a notable concession on its own, they had no avenue for relief; the 2012 summary judgment "order [wa]s not final and could not be appealed."

Our case law undermines their position. *Cf. Provident Life & Accident Ins. Co. v. Genovese*, 138 So. 3d 474, 479 (Fla. 4th DCA 2014) ("A party cannot successfully complain about an error for which he or she is responsible, or of rulings that he or she has invited the trial court to make."); *Elliot v. Aurora Loan Servs.*, 31 So. 3d 304, 307 (Fla. 4th DCA 2010) ("[I]gnorance of the law and failure to understand consequences are not viable excuses . . . ."). The Evanses tell us "that an order merely granting a motion for summary judgment is not a final order because it does not enter judgment for or against a party." *Lidsky Vaccaro & Montes, P.A. v. Morejon*, 813 So. 2d 146, 149 (Fla. 3d DCA 2002) ("[T]he law is settled that an order which merely grants a motion for summary judgment and does not otherwise contain the traditional words of finality is not a final order subject to appellate review."). True enough. But this conflates finality with appealability.

To the extent the 2012 summary judgment order was anything but final, the Evanses could have asked the trial court to render a final judgment. After all, they filed a rehearing motion under Florida Rule of Civil Procedure 1.530, conceding, sub silentio, that the order was final. *See Seigler v. Bell*, 148 So. 3d 473, 478 (Fla. 5th DCA 2014). I think it is inequitable to let the Evanses wield their decision not to appeal as both a sword and a shield.

Moreover, their position on appealability is legally mistaken. This court, like others, recognizes the difference between an order granting a motion for summary judgment and a final judgment. *See Wahl v. Taylor*, 926 So. 2d 488, 489 (Fla. 2d DCA 2006) ("[A]n order merely granting a motion for summary judgment is not a final order."); *Better Gov't Ass'n of*

25

*Sarasota Cnty. v. State*, 802 So. 2d 414, 415 (Fla. 2d DCA 2001) ("The order that grants a motion for summary judgment is likewise not appealable, as it lacks the finality of an order entering judgment in favor of a party and against the party opponent."). The majority leaves it there, placing formality over functionality.

Had the Evanses appealed the 2012 summary judgment order, it is not inconceivable that this court would have concluded that judicial labor was completed, notwithstanding the absence of magic words. The Evanses asked for declaratory relief. That is what they received. After all, the trial court stated that its "sole declaration is which party is responsible for maintaining . . . the drainage easement area." This profession suggests that the trial court thought its order was final.

Even if not, our decades-long precedent requires that rather than outright dismissing an appeal of a summary judgment order, we "relinquish[] jurisdiction to enable an appellant to obtain an appealable order." *Wahl*, 926 So. 2d at 489 n.2;[8] *Discount Fireworks of Cent. Fla., Inc. v. Sarasota County*, 922 So. 2d 433, 434 (Fla. 2d DCA 2006) ("*Ordinarily, we . . . relinquish jurisdiction to the trial court for entry of an appropriate final summary judgment.* Unfortunately, the order suffers a more fundamental defect; it does not resolve the issues presented by Discount in its lawsuit. Consequently, we are compelled to dismiss the appeal and remand for further proceedings." (emphasis added) (citation omitted)); *Better Gov't Ass'n of Sarasota Cnty.*, 802 So. 2d at 415 (relinquishing jurisdiction to allow the appellants "to obtain a final

---

[8] In *Wahl*, 926 So. 2d at 489 n.2, we recognized that our approach "differs from that of the First and Fifth Districts which automatically dismiss an appeal for lack of jurisdiction if the order appealed is not final."

summary judgment with sufficient words of finality to confer upon *this court jurisdiction* to determine its correctness" (emphasis added)).

Remarkably, the majority presumes that our relinquishment precedent is but a "practice," carrying no weight. *See Better Gov't Ass'n of Sarasota Cnty.*, 802 So. 2d at 416 ("By allowing appellants to obtain an appealable order in this case, we are promoting judicial economy and accommodating the parties' expectations to have their appeal considered as expeditiously and inexpensively as possible."). Surely, it cannot be the case that the majority can ignore our precedent and reframe it as something this court "ordinarily does," as merely a "practice [that] cannot be considered mandatory." To be perfectly clear, our ordinary practice, reflected in numerous authored opinions, constitutes our binding precedent. *See Strand v. Escambia County*, 992 So. 2d 150, 159 (Fla. 2008) ("[T]he 'doctrine of *stare decisis*, or the obligation of a court to abide by its own precedent, is grounded on the need for stability in the law and has been a fundamental tenet of Anglo–American jurisprudence for centuries.' " (quoting *N. Fla. Women's Health & Counseling Servs., Inc. v. State*, 866 So. 2d 612, 637 (Fla. 2003))). Regrettably, I fear that the majority countenances the outright dismissal of an appeal without giving an appellant the opportunity to fix the problem, as we have long allowed.[9]

---

[9] Our standard order provides that

> [a]ppellant shall show cause within twenty days why this appeal should not be dismissed for lack of jurisdiction. *See Wahl*[,926 So. 2d at 489]("[A]n order merely granting a motion for summary judgment is not a final order."); *Better Gov't Ass'n of Sarasota Cty.*[, 802 So. 2d at 414]. **Jurisdiction is relinquished to the extent necessary to allow the trial court to enter an appealable, final order**. Should appellant provide this court with such an appealable, final order within twenty days, this premature appeal will be mature and will

27

**(4)   The parties in the two proceedings must be identical**

From start to finish, the parties in Case Numbers 2011-CA-1675 and 2012-CA-7895 are the same.

**(5)   The issues must have been actually litigated**

Lastly, we must determine whether the abiding issue was "actually litigated."  Of course it was.

The majority insists otherwise.  It maintains (a) that the issue that was "actually litigated" never resulted in the form of a "final decision" and (b) that the dismissal order, which was the decision that ended Case Number 2011-CA-1675, was not on the merits.  With an ample record reflecting over a dozen years of litigation, the majority ignores reality.  I see no factual or legal footing for its position.

**(a)   The 2012 summary judgment order**

The majority insists that there was no "final decision" because "[t]he issue resolved by [the 2012 summary judgment order] was never reduced to a final judgment."

Curiously, when laying out the collateral estoppel test, many of the authorities cited to and quoted by the majority do not use the phrase "final judgment."  In fact, decisions from this court and others vacillate between the terms "final judgment," "judgment," "decision," and "final decision," or simply refer to the issue having been "actually litigated."  I

---

proceed to consideration.  *See* Fla. R. App. P. 9.110(*l*) (stating that if a notice of appeal is prematurely filed before rendition of a final order, "the lower tribunal retains jurisdiction to render a final order") (effective Jan. 1, 2015).  **If appellant fails to present an appealable order within that time frame, or persuade this court that the existing order is appealable, this appeal will be subject to dismissal without further notice**.

(Emphases added.)  I emphasize that this court issues such orders regularly; they are not few and far between.

28

have earlier cited such cases. The majority even "[c]oncede[s that] the standard for collateral estoppel is often described in recorded opinions without reference to a final judgment or final order, instead imposing only a requirement that there be a final decision." Yet, the majority most assuredly proclaims that "collateral estoppel requires the precluded issue to have been determined by a final 'judgment.' " This may very well be true for purposes of appellate jurisdiction. Yet again, however, the majority conflates finality and appealability.[10] I cannot conclude that a trial court facing the same issue disposed of in 2012 by an experienced trial judge must reconsider an issue long resolved.

The majority elevates form over substance. Collateral estoppel's applicability does not turn on the form of the judgment, but whether the issue was adjudicated in the prior proceeding. *See Fernandez v. Cruz*, 341 So. 3d 410, 415 (Fla. 3d DCA 2022) ("[F]or collateral estoppel to apply, '[i]t is essential that the question common to both causes of action was [a]ctually adjudicated in the prior litigation.' " (second alteration in original) (quoting *Seaboard Coast Line R.R. Co. v. Indus. Contracting Co.*, 260 So. 2d 860, 864 (Fla. 4th DCA 1972))); Restatement (Second) of Judgments § 27 cmt. d (Am. Law Inst. 1982) ("When an issue is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined, the issue is actually litigated within the meaning of this [doctrine]."). Undoubtedly, the Evanses' adjudicated

---

[10] On this record, with the trial court having denied the Evanses rehearing, there is little daylight between an order granting summary judgment and an order entering judgment. As I explained earlier, in the case of an appeal from the former, we relinquish jurisdiction for the trial court to enter judgment. The order's apparent deficiency in form, not substance, called for a simple fix that necessitates neither additional argument nor reopening of evidence.

29

the issue, which the trial court resolved in the HOA's favor in the 2012 summary judgment order.

However, the majority explains, until a final judgment has been entered, "the court retains inherent authority to revisit it until entry of a final judgment":

> [W]ithout a final judgment an interlocutory decision such as the [2012 summary judgment order] is not final because the court retains inherent authority to revisit it until entry of a final judgment. . . . Before that point, however, "[i]t is well established that a trial court may reconsider and modify interlocutory orders at any time until final judgment is entered."

This is true, as far as it goes. But the Evanses moved for rehearing on the 2012 summary judgment order. The majority fails to mention, let alone address, this important piece of our record. The trial court denied the Evanses' rehearing motion. Thus, given the specific opportunity to "revisit" the 2012 summary judgment order, the trial court explicitly declined. Requiring the trial court to enter a perfunctory "final decision" for its own sake, is, to me, unnecessary on this record. Collateral estoppel's applicability does not turn upon such a superfluous action.

Following entry of the 2012 summary judgment order, everyone seemingly treated the order as final. Seeking rehearing under rule 1.530, the Evanses surely knew they were dealing with a final order. "Motions for 'rehearing' pursuant to Florida Rule of Civil Procedure 1.530 apply only to final judgments and 'those orders that partake of the character of a final judgment, i.e., orders that complete the judicial labor on a portion of the cause.' " *Seigler*, 148 So. 3d at 478 (quoting *Francisco v. Victoria Marine Shipping, Inc.*, 486 So. 3d 1386, 1390 n.6 (Fla. 3d DCA 1986)). Additionally, the trial court would not allow the HOA to pursue monetary relief in the 2011 case. The HOA saw *the* issue in dispute as finally resolved. The HOA filed a new lawsuit.

30

The majority says that "[t]he [2016 dismissal order] was not an order on the merits . . . . Rather, the [2016 dismissal order] disposed of the case for lack of prosecution, which is not a merits decision that can trigger preclusive doctrines such as res judicata or collateral estoppel." By this reasoning, the majority reduces the 2012 summary judgment order to a cipher, giving no weight to the trial court's efforts in the 2011 lawsuit.

However, it bears repeating that when applying the equitable doctrine of collateral estoppel, context matters. *Cf. Smith v. State*, 320 So. 3d 20, 31 (Fla. 2021) ("Context matters in evaluating a trial court's exercise of discretion in evidentiary rulings."). Context provides perspective. The HOA actively litigated its entitlement to recover maintenance costs from the Evanses. The trial court may have dismissed the 2011 lawsuit, but it certainly was not due to the HOA's failure to pursue relief. *See Miranda v. Volvo N. Am. Corp.*, 763 So. 2d 536, 537 (Fla. 3d DCA 2000) (observing that Florida Rule of Civil Procedure 1.420(e) (Dismissal of Actions) "serves a narrow purpose: to encourage the movement of a case towards a conclusion on the merits").

From 2011 through the bench trial in 2022, the Evanses consistently haggled over one issue: who must maintain the drainage easement. Repeatedly, they have come up short. Affirming the trial court's order and putting this thoroughly litigated issue to rest will not result in a manifest injustice to the Evanses. *See Fed. Nat'l Mortg. Ass'n*, 358 So. 3d at 758. Requiring the HOA to, again, expend unnecessary time and money to relitigate the same issue *is* inequitable. And the majority forces the trial court to waste limited judicial resources on continued litigation. *See Montana v. United States*, 440 U.S. 147, 153–54 (1979) ("To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the

31

expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions.").

My position rests on one additional consideration, the trial court's discretion to prevent the needless presentation of evidence. Section 90.612(1), Florida Statutes (2022), requires trial courts to "exercise reasonable control over the mode and order of the interrogation of witnesses and the presentation of evidence." Two purposes of this duty are to "[f]acilitate, through effective interrogation and presentation, the discovery of the truth" and to "[a]void needless consumption of time." § 90.612(1)(a), (b).

In furtherance of these ends, the trial court is afforded wide discretion to determine what evidence will be admitted. *See Hidden Ridge Condo. Homeowners Ass'n v. Onewest Bank, N.A.*, 183 So. 3d 1266, 1268–69 (Fla. 5th DCA 2016) ("A trial court has wide discretion in determining the admissibility of evidence, and, absent an abuse of discretion, the trial court's ruling on evidentiary matters will not be overturned." (quoting *LaMarr v. Lang*, 796 So. 2d 1208, 1209 (Fla. 5th DCA 2001))). We will not reverse an order subject to an abuse of discretion standard unless no reasonable person would have reached the same decision. *See Canakaris v. Canakaris*, 382 So. 2d 1197, 1203 (Fla. 1980) ("If reasonable [persons] could differ as to the propriety of the action taken by the trial court, then the action is not unreasonable and there can be no finding of an abuse of discretion.").

Going into the 2022 bench trial, the trial court was keenly aware of the 2011 lawsuit. Indeed, the trial court recited the findings and conclusions contained in the 2012 summary judgment order. Clearly, the trial court accepted the result. Presumably concerned with case

management and judicial economy, the trial court saw no need to revisit a well-worn issue.

The majority suggests that this additional consideration is improper; I "ha[ve] no way of knowing whether the Evanses had new or different evidence or *arguments* to present, had they been permitted to do so." This is a curious position to take as it requires ignoring the record evidence documenting the Evanses consistent and repeated attempts to return to the well and litigate the issue of who bore responsibility for maintaining the drainage easement.

The Evanses' January 29, 2021, summary judgment motion sought a "determination of who is obligated to provide maintenance of the retention ponds," describing it as "the only issue in this action." Thereafter, the Evanses July 15, 2022, summary judgment motion alleged that "[t]he [HOA] has not shown or justified the assertion that parcel owners are responsible for stormwater management system's retention ponds on their property." And, as carefully detailed above, the Evanses repeatedly unsuccessfully broached this subject at the July 2022 bench trial, both in its argument and questioning. The Evanses' fealty to this issue was, is, and remained, preceding the 2012 summary judgment order, through their multiple summary judgment motions leading up to and through their bench trial. We need not divine what arguments the Evanses had conjured up for the 2022 bench trial, the record already tells us. *See Derouin v. Universal Am. Mortg. Co.*, 254 So. 3d 595, 601 (Fla. 2d DCA 2018) ("An issue that has not been framed by the pleadings, noticed for hearing, or litigated by the parties is not a proper issue for the court's determination." (quoting *Gordon v. Gordon*, 543 So. 2d 428, 429 (Fla. 2d DCA 1989))).

33